UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT H. SMITH, *et al.*, | |
| Plaintiffs, | Case No. C17-1457-RSL-MAT |
| v. | |
| RYAN W. PHILLIPS, *et al.*, | REPORT AND RECOMMENDATION |
| Defendants. | |

INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiffs Robert Smith and James Phillips filed the instant action while both were in federal custody at the Federal Detention Center in SeaTac, Washington. Plaintiff Smith has now been released from custody while plaintiff Phillips has been transferred to the Federal Correctional Institution in Victorville, California. This action arises out of plaintiffs' arrests by Snohomish County deputy sheriffs in July 2016 for alleged criminal activity which led to charges being filed against plaintiffs in this Court.[1] Specifically, plaintiffs allege in their second amended complaint, the operative pleading

---

[1] Plaintiff Robert Smith ultimately pled guilty to a charge of aiding and abetting a felon in possession of a firearm and was sentenced to a term of 24 months confinement. *See* CR17-085-JCC, Dkts. 81, 115, 125. Plaintiff

REPORT AND RECOMMENDATION - 1

in this action, that defendants used excessive force in effectuating their arrests and denied them medical care for injuries suffered during the arrests. (*See* Dkt. 11.)

Defendants in this action are Snohomish County Deputy Sheriffs Ryan Phillips, Brian Emery, and Jose-Angel Vargas, Snohomish County Sheriff's Office Evidence Control Officer Janet Lee Malkow, and City of Everett Police Detectives Robert Cracchilo and Jarrod Seth.[2] All defendants have now filed motions for summary judgment. (*See* Dkts. 74, 79.) Plaintiffs have been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), but have not responded to defendants' motions. The Court, having reviewed plaintiff's second amended complaint, defendants' motions for summary judgment, and the balance of the record, concludes that defendants' motions should be granted, and that plaintiffs' second amended complaint and this action should be dismissed with prejudice.

## FACTS

On July 10, 2016, Snohomish County Deputy Sheriff Ryan Phillips was on duty when he saw a public post on Facebook by Jason Smith-Brennan, an individual whom he knew from prior contacts and who went by the street names of "shitty" or "big shitty." (Dkt. 87, ¶ 2.) Deputy Phillips also saw a comment on the post from an individual named James Phillips who wrote "you need to relax homie hit me up got few things we can do to help you and put money in your pocket." (*Id.*) Mr. Phillips included his photograph and phone number in the post. (*Id.*) Deputy Phillips, thinking he recognized Mr. Phillips, ran Mr. Phillips through his computer and discovered that Mr. Phillips was on Washington Department of Corrections ("DOC") supervision for a second-degree

---

James Phillips pled guilty to a charge of being a felon in possession of a firearm and was sentenced to a term of 29 months confinement. *See id.*, Dkts. 16, 52, 136.

[2] Additional claims and defendants were previously dismissed from this action. (*See* Dkts. 16, 21.)

REPORT AND RECOMMENDATION - 2

assault conviction and that the DOC had a felony warrant for his arrest. (*Id.*)

Deputy Phillips, posing as an acquaintance of "shitty," initiated a conversation via text message with Mr. Phillips in an effort to obtain Mr. Phillips' location and arrest him on the outstanding DOC warrant. (*Id.*, ¶ 3.) Deputy Phillips exchanged a number of text messages with Mr. Phillips between July 10 and July 12 during which they discussed doing "licks," street slang for robberies or burglaries, and Deputy Phillips invited Mr. Phillips to participate in a "lick" he had planned in Lynnwood. (*Id.*, ¶ 4.) Deputy Phillips and Mr. Phillips also discussed, in a covert fashion, the use of weapons in the "lick" Deputy Phillips claimed he had planned. (*Id.*, ¶ 5.) On July 12, 2016, Mr. Phillips told Deputy Phillips that he and an individual named "Duke" would be coming up to meet him that evening. (*Id.* and Ex. 1 at 6-7.) Deputy Phillips was not certain who "Duke" was, though he knew of a "Duker Smith," real name Robert H. Smith, who once lived in Snohomish County. (*Id.*, ¶ 6.) Deputy Phillips knew that Robert Smith was a convicted felon with a criminal history that included state charges for first degree burglary and first degree kidnapping. (*Id.*)

Deputy Phillips developed a plan to arrange a meeting with Mr. Phillips and Duke at a location in Lynnwood, and he assembled a team to arrest the pair. (*Id.*, ¶ 7.) Deputy Phillips' team included seven uniformed Snohomish County deputy sheriffs and four plainclothes detectives assigned to the Snohomish Regional Drug Task Force. (*Id.*, ¶¶ 7, 9.) The detectives were Brian Emery and Jose Vargas of the Snohomish County Sheriff's Office, and Robert Cracchilo and Jarrod Seth from the Everett Police Department. (*Id.*, ¶ 7.) Deputy Phillips advised his team that Mr. Phillips had an outstanding warrant, and that Mr. Phillips and the individual he believed to be Duker Smith were both violent convicted felons and likely had one or more firearms in their possession. (*Id.*, ¶ 8.) Deputy Phillips showed photographs of Mr. Phillips and Mr. Smith to the

REPORT AND RECOMMENDATION - 3

operational team. (*Id*.)

Deputy Phillips anticipated that Mr. Phillips and Mr. Smith would arrive in Lynnwood sometime after 11:00 p.m. (*Id*., ¶ 7.) The planned meeting location was at the end of 15th Avenue West off of Madison Way in Lynnwood. (*Id*.) Deputy Phillips selected this location because 15th Avenue West is a cul-de-sac with only one way in and one way out. (*Id*.) All of the uniformed deputies involved in the operation were driving marked patrol cars and their role was to stop the suspects' car and take them into custody. (*Id*., ¶ 9.) Three of the units were to park out of sight on 15th Avenue West, while the remaining deputies were stationed on Madison Way on either side of the entrance to 15th Avenue West. (*Id*., ¶¶ 9, 10.) The role of the four plain clothes detectives was to assist Deputy Phillips with surveillance, they were not to take part in stopping the suspect vehicle or in making the arrests. (*Id*., ¶ 11.) Deputy Phillips' role was to conduct surveillance and provide the operational team status reports via the radio from a concealed position across from the entrance to 15th Avenue West. (*Id*., ¶ 12.)

Deputy Phillips, through ongoing texts with Mr. Phillips, provided directions to the meeting location and learned that the suspects were driving a rented KIA automobile, though he was not told the model or color of the vehicle. (*Id*., ¶ 13.) At approximately 11:35 p.m., a white KIA travelling on Madison Way pulled off the roadway and parked close to Deputy Phillips' concealed position where the driver exited the vehicle and opened the trunk. (*Id*., ¶ 14.) Though Deputy Phillips could not get visual confirmation of the driver, he was able to confirm that the KIA was a rental vehicle. (*Id*.) The driver got back into the vehicle and turned onto 15th Avenue West. (*Id*.) Deputy Phillips then got a text from Mr. Phillips indicating that they had found the meeting location. (*Id*.) Deputy Phillips instructed the arresting units to move in, and the first patrol units arrived with their lights flashing and stopped the vehicle approximately 200 feet from

REPORT AND RECOMMENDATION - 4

where Deputy Phillips was parked. (*See id.*; Dkt. 85, ¶ 4.) Deputy Phillips then radioed the patrol units stationed on Madison Way to proceed to the scene. (*See* Dkt. 86, ¶ 5; Dkt. 87, ¶ 14.)

After the KIA was stopped, the two suspects were given instructions to exit the vehicle with which they ultimately complied. (Dkt. 85, ¶ 5; Dkt. 86, ¶¶ 6, 7.) The driver, Mr. Smith, exited the vehicle first and was handcuffed before being placed into a patrol car. (Dkt. 85, ¶ 5; Dkt. 86, ¶ 6.) Mr. Phillips subsequently exited the vehicle and was also handcuffed before being placed into a different patrol car. (Dkt. 86, ¶ 7.) Deputy Phillips spoke with both suspects after they had been placed in the patrols cars, and both agreed to speak with detectives. (Dkt. 87, ¶¶ 15, 17.)

Mr. Smith and Mr. Phillips were transported by patrol deputies to the Snohomish County Sheriff's Office precinct station in Mill Creek where they provided taped statements. (*See id.;* Dkt. 76 at 5-96; Dkt. 87-3.) Mr. Smith was interviewed by City of Everett Detectives Cracchilo and Seth and was then released pending execution of a search warrant on the vehicle and referral to prosecutors. (*See* Dkt. 76, ¶ 7 and at 5-96; Dkt. 77, ¶ 7; Dkt. 87, ¶ 15.) Mr. Phillips was interviewed by Deputy Phillips and Detectives Emery and Vargas, and was then transported by Deputy Phillips to the Snohomish County Jail to be booked on the DOC warrant. (Dkt. 82, ¶ 6; Dkt. 87, ¶ 17; Dkt. 87-3.)

Plaintiffs filed the instant action in September 2017 while they were awaiting disposition of federal gun charges filed in relation to the 2016 traffic stop. (*See* Dkt. 1.) Plaintiffs allege in their second amended complaint that defendant Ryan Phillips, Robert Cracchilo, Jarrod Seth, Lee Malkow and Brian Emery used excessive force against them in effectuating their arrests. (Dkt. 11.) Plaintiffs further claim that these five defendants, along with defendant Jose-Angel Vargas, denied them medical care for injuries suffered in the use of force incident. (*Id.*)

REPORT AND RECOMMENDATION - 5

## DISCUSSION

### Summary Judgment Standard

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in

REPORT AND RECOMMENDATION - 6

original). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003).

<u>Section 1983 Standard</u>

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

Excessive Force

Plaintiffs assert that defendant Phillips, while effectuating plaintiff Smith's arrest, squeezed plaintiff's fingers with such force that one of the fingers broke. (Dkt. 11 at 6.) Plaintiffs further assert that defendant Phillips and other unnamed deputies slammed plaintiff Smith face

REPORT AND RECOMMENDATION - 7

first into the ground, and then yelled at him, threatening to shoot him when he asked questions about what was going on. (*Id*. at 6-7.) Plaintiffs assert that excessive force was used in effectuating plaintiff Phillips' arrest as well. Plaintiffs claim that defendant Phillips instructed plaintiff Phillips to exit the vehicle by climbing out the window and then, when plaintiff was halfway out, defendant Phillips and other unnamed deputies grabbed plaintiff Phillips and slammed his body into the ground. (*Id*. at 7.)

In addition to these two incidents of excessive force, which allegedly occurred at the time of plaintiffs' arrests, plaintiffs also allege that defendant Cracchilo grabbed plaintiff Smith "really hard" by the neck during the course of a subsequent interrogation at the Snohomish County Sheriff's Office, and that defendant Seth failed to assist plaintiff Smith when defendant Cracchilo put his hands on plaintiff. (*Id*. at 8-9.)

The United States Supreme Court has made clear that all claims that law enforcement officers used excessive force in the course of an arrest must be analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Supreme Court explained in *Graham* that "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397 (citation omitted). The Court cautioned that reasonableness must be assessed from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and must allow for the fact that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

To determine whether the force allegedly used was objectively reasonable, the Court must

REPORT AND RECOMMENDATION - 8

balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396. In other words, the Court weighs the type and amount of force inflicted against the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, whether the suspect is actively resisting arrest or attempting to evade arrest by flight, and any other relevant factors. *See id*.; *Jackson v. City of Bremerton*, 268 F.3d 646, 651-52 (9th Cir. 2001); *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

The record makes clear that the law enforcement officers who effectuated plaintiffs' arrests were aware that plaintiffs were both convicted felons, that they were in possession of firearms, and that they had come to Lynnwood with the intent to commit robberies. Thus, it was certainly reasonable for officers to use appropriate caution, and perhaps some degree of force, in effectuating the arrests. However, it is difficult to discern from the record before the Court precisely how much force was used in this instance.

Defendants refute plaintiffs' characterization that they were "slammed" to the ground at the time of their arrests. Defendants do not refute the assertion that plaintiff Phillips was pulled out of the car through the window, that plaintiffs were taken to the ground in some fashion, and that deputies made threats to shoot plaintiffs while effectuating the arrests. Defendants likewise do not refute plaintiffs' claims that they did not resist arrest. One of the deputies who was present at the time of the arrests, Deputy Sheriff Jay Ravenscraft, noted that plaintiffs required some verbal coaxing, but ultimately complied with deputies' instructions to exit the vehicle. (Dkt. 85, ¶ 5.) On this somewhat sparse record, it is difficult to determine whether the force applied in effectuating plaintiffs' arrests was reasonable. Fortunately, the Court need not resolve this issue because the evidence in the record does make clear that none of the defendants named in this action were

REPORT AND RECOMMENDATION - 9

directly involved in making the arrests.

At times relevant to this action, Janet Lee Malkow worked at the Snohomish County Sheriff's Office in a civil position as an Evidence Control Officer. (Dkt. 84, ¶ 3.) She states in her declaration that she was not present during the arrests or interviews of plaintiffs and had no prior knowledge of the operation that led to the plaintiffs' arrests. (*Id*., ¶ 4.) She further states that her only connection with the arrests occurred when she booked property on the case in July 2016. (*Id*.) Plaintiffs offer no evidence to rebut that presented by defendants that Ms. Malkow was not present at, and was no way involved in, plaintiffs' arrests.[3]

The evidence in the record also demonstrates that the sole role of defendants Cracchilo, Seth, Emery and Vargas in the operation which resulted in plaintiffs' arrests was to conduct surveillance, and that none of these four individuals were present when plaintiffs were arrested and taken into custody. (*See* Dkt. 76, ¶¶ 3, 4; Dkt. 77, ¶¶ 3, 4; Dkt. 82, ¶¶ 4, 5.) Defendants Emery and Vargas were not in a position to see the arrest scene from their location and only proceeded to the scene of the arrest after they heard over the radio that both suspects were in custody. (Dkt. 82, ¶ 5.) Defendants Cracchilo and Seth likewise were not present at the time plaintiffs were arrested but were, instead, down the block in their vehicle. (Dkt. 76, ¶ 4; Dkt. 77, ¶ 4.) Neither of the detectives even saw plaintiffs being placed in handcuffs because they were too far away. (*Id*.)

Finally, as to defendant Phillips, the evidence suggests that though he could see the arrests from his location, he did not proceed to the scene until after the plaintiffs had been taken into custody and were seated in the back of patrol cars. (*See* Dkt. 87, ¶¶ 14, 15, 17.) Plaintiffs offer

---

[3] In fact, it appears from plaintiffs' deposition testimony that Ms. Malkow was named as a defendant merely because her name appeared in an investigative report and not because plaintiffs had any actual knowledge of her being present at the time of their arrests. (*See* Dkt. 75, Ex. 1 at 59:22-60:7 and Ex. 2 at 18:6-27:15.)

REPORT AND RECOMMENDATION - 10

1   no evidence of their own to rebut that presented by defendants that none of the detectives nor
2   defendant Phillips were involved in effectuating plaintiffs' arrests and that it was the seven
3   uniformed Snohomish County deputies, none of whom are named as defendants in this action, who
4   made the initial contact with plaintiffs and took them into custody. (*See* Dkt. 87, ¶¶ 9, 11, 12.)
5   Defendants' summary judgment motions should therefore be granted with respect to plaintiffs'
6   excessive force claims arising out of their arrests.

7   To the extent plaintiffs contend that defendant Cracchilo used excessive force against
8   plaintiff Smith during the interview when he allegedly grabbed plaintiff by the neck, they also fail
9   to establish a viable excessive force claim. Plaintiffs assert in their second amended complaint
10  that defendant Cracchilo grabbed plaintiff "really hard" by the neck and told plaintiff "It's in your
11  best interest to stop holding back." (Dkt. 11 at 9.) Plaintiffs further assert that plaintiff Smith went
12  on to tell defendant Cracchilo that he didn't know what to do or say, that he was hurt and required
13  medical attention, and that "you can't touch me." (*Id*.)

14  Plaintiff Smith, during his deposition testimony, described defendant Cracchilo's actions
15  during the interview as a "pinch" to the back of his neck which he claims hurt because he was
16  already in pain. (Dkt. 75, Ex. 2 at 123: 3-13.) Plaintiff Smith also testified that he thought
17  defendant Cracchilo was trying to hurt him "So that he could get what he wanted out of me." (*Id*.
18  at 123: 18-21.) When asked to describe how long defendant Crachillo had his hand on plaintiff
19  Smith's neck, plaintiff Smith answered "Four seconds or a couple minutes. I can't really recall."
20  (*Id*. at 124: 5-6.) Plaintiff Smith further testified that this happened before they began the taped
21  interview because defendant Crachilllo was trying to ask plaintiff Smith if he would do the
22  interview. (*See id*. at 124: 7-13; *see also*, *id*. at 89:11-90:14.)

23  The Court first notes that the suggestion that plaintiff Smith had to be persuaded by

REPORT AND RECOMMENDATION - 11

1  defendant Crachillo to participate in the interview is inconsistent with the evidence in the record.
2  According to defendant Phillips, while speaking with plaintiff Smith at the scene of the arrest,
3  plaintiff Smith agreed to talk to detectives and provide a taped interview after being given his
4  *Miranda* warning. (Dkt. 87, ¶ 15.) Once in the interview room with detectives Crachillo and Seth,
5  plaintiff was once again read his rights and he once again agreed, without any apparent hesitation
6  or equivocation, to make a statement. (Dkt. 76 at 5.)

7  Moreover, defendants Crachillo and Seth both deny that Mr. Smith was threatened,
8  touched, or assaulted in any way during the interview. (Dkt. 76, ¶ 8; Dkt. 77, ¶ 8.)  In fact, both
9  defendants described the interview with plaintiff Smith as being "relatively cordial under the
10 circumstances," and the transcript confirms that the interview was devoid of any threats or
11 complaints from plaintiff Smith regarding the conduct of the detectives. (*See* Dkt. 76, ¶ 9 and 5-
12 96; Dkt. 77, ¶ 9.)  Near the end of the interview with plaintiff Smith, defendant Crachillo
13 specifically asked plaintiff on the record whether his statement had been made freely and
14 voluntarily and without any threats or promises of any kind, and plaintiff responded "Yeah. I don't
15 know, there's no threats." (Dkt. 76 at 82.)  This acknowledgement contradicts the assertions in
16 plaintiffs' second amended complaint, and plaintiff Smith's deposition testimony, regarding
17 threats defendant Crachillo allegedly made to encourage plaintiff Smith's cooperation.

18 It is noteworthy as well that there is a lack of evidence in the record that plaintiff Smith
19 suffered any physical injury before or during the interview which also undermines plaintiffs'
20 excessive force claim against defendant Crachillo for conduct which allegedly occurred after
21 plaintiffs arrived at the Sheriff's Office for questioning.  The summary judgment motion of
22 defendants Crachillo and Seth should therefore be granted with respect to this portion of plaintiffs'
23 excessive force claim as well.

REPORT AND RECOMMENDATION - 12

Medical Care

Plaintiffs appear to assert that plaintiff Smith requested medical attention for an alleged broken finger while he was seated in the back of the patrol car at the scene of his arrest. (Dkt. 11 at 8.) Plaintiffs also assert that after being taken to the Snohomish County Sheriff's Office to be interviewed following their arrests, they requested medical attention for injuries suffered during their arrests, but never received any care. (*Id*. at 7-9, 11.) Plaintiffs claim that they suffered significant injuries to fingers, necks and backs, and that their faces were scraped from the pavement. (*Id*. at 11.) Plaintiffs allege that defendants violated their Eighth Amendment rights when they failed to ensure that plaintiffs were provided adequate medical attention for their alleged injuries. (*Id*.)

Because plaintiffs were in custody pursuant to an arrest and not a criminal conviction, their medical care claims arise under the Fourteenth Amendment and not the Eighth Amendment.[4] *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996); *see also Shorter v. Baca*, 895 F.3d 1176, 1183 (9th Cir. 2018) (the "more protective" Fourteenth Amendment standard applies to detainees who have not been convicted of a crime).

The elements of a pretrial detainee's medical care claim under the Fourteenth Amendment are: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk

---

[4] Because plaintiff Phillips was on DOC supervision at the time of his arrest, he arguably qualifies as a convicted prisoner to whom the Eighth Amendment applies. However, under either standard plaintiffs' medical care claim fails.

REPORT AND RECOMMENDATION - 13

involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (citing *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)).

The record is devoid of any actual evidence that plaintiffs were injured during their arrests or that they requested medical care while in defendants' custody. The deputies who transported plaintiffs to the Sheriff's Office for questioning, Deputy Jay Ravenscraft and Deputy Nathan Smith, state in their respective declarations in support of defendants' summary judgment motions that they never observed any injuries on either plaintiff nor did either plaintiff ever request medical care. (Dkt. 85, ¶ 6; Dkt. 86, ¶ 9.) Defendants Crachillo, Seth, Emery and Phillips likewise indicate that plaintiffs never appeared to be injured, never complained of any injuries, and never requested medical attention. (*See* Dkt. 76, ¶ 9; Dkt. 77, ¶ 9; Dkt. 82, ¶ 7; Dkt. 87, ¶¶ 16, 18.)

Plaintiff Phillips conceded at his deposition that he did not ask to receive medical aid at any time during his interview with detectives and only requested such care after he got to the Snohomish County Jail. (*See* Dkt. 75, Ex. 1 at 56:2-16.) While the record does not support plaintiff Phillips' claim that he sought medical care after arriving at the Jail, whether he did or not is irrelevant as Jail personnel are not parties to this action. (*See* Dkt. 83, Ex. 2, 3.) In fact, plaintiff Phillips offers no evidence that he ever sought any medical care for injuries he claims to have suffered during his arrest.

Plaintiff Smith, on the other hand, testified at his deposition that he continually and repeatedly asked for medical assistance during his interview at the Sheriff's Office. (*See* Dkt. 75, Ex. 2 at 91:18-95:20.) As noted above, plaintiff Smith's interview was tape recorded and nowhere in the transcript of that recorded interview does plaintiff make any complaints of injury nor any

REPORT AND RECOMMENDATION - 14

request for medical attention. Plaintiff Smith testified at his deposition that his requests for medical attention were made at times when the tape recorder was turned off. (*See id*.) However, the transcript of plaintiff Smith's interview gives no indication that the tape was ever turned off, and plaintiff confirmed on the recording that he had never requested at any point that the recording be turned off. (Dkt. 76 at 85.)

It is also significant to note that there is no evidence plaintiff Smith sought any medical care following the interview despite his alleged insistence during the interview that he be provided care for what he now claims were serious injuries. Plaintiff Smith was released from custody immediately following the interview and he conceded at his deposition that he only sought medical care on one occasion thereafter and that was "somewhere within a month's time" after the events of July 12-13, 2016. (Dkt. 75, Ex. 2 at 50: 18-20.) This suggests, at the very least, that any claimed injury was not especially serious. It is noteworthy as well that plaintiff Smith, who claimed during his deposition that he had documentation which would confirm that he had obtained treatment for injuries suffered during his arrest, has provided no such documentation to the Court.

There is simply no evidence in the record to support plaintiffs' claim that they requested and were denied access to necessary medical care following their arrests. Accordingly, defendants are entitled to summary judgment with respect to plaintiff's medical care claims.

## CONCLUSION

Based on the foregoing, this Court recommends that defendants' motions for summary judgment be granted and that plaintiffs' second amended complaint and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.

REPORT AND RECOMMENDATION - 15

Failure to file objections within the specified time may affect the right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **July 19, 2019**.

DATED this 26th day of June, 2019.

Mary Alice Theiler
United States Magistrate Judge